IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NICOLAS ALLEN SNYDER, by and through his guardian ad litem, ANGELINA WALKER,

Plaintiff, No. 2:12-cv-0186-KJN

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant. ORDER

_________________________________/

Plaintiff Nicolas Allen Snyder (hereafter "plaintiff"), by and through his guardian ad litem Angelina Walker, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1] In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from November 8, 2008, the date that his SSI application was filed, through the date of the final administrative decision. (Dkt. No. 18.) The Commissioner filed an opposition to

[1] This case was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented to proceed before a United States Magistrate Judge. (Dkt. Nos. 10, 13.)

plaintiff's motion and a cross-motion for summary judgment. (Dkt. No. 21.) For the reasons discussed below, the court grants plaintiff's motion for summary judgment in part, denies the Commissioner's cross-motion for summary judgment, remands the case for further proceedings under sentence four of 42 U.S.C. § 405(g), and enters judgment for plaintiff.

I. BACKGROUND

Plaintiff was born on October 20, 1998, and was a seventh grader in middle school at the time of the final administrative decision.[2] (Administrative Transcript ("AT") 19, 86-87, 159.) On November 8, 2008, plaintiff's mother applied for SSI on his behalf, alleging that plaintiff was disabled as of August 1, 2002, primarily due to attention deficit hyperactivity disorder ("ADHD") and other mental impairments. (AT 15, 86-87, 159, 200, 204.) On May 8, 2009, the Commissioner determined that plaintiff was not disabled. (AT 15, 86.) Upon plaintiff's request for reconsideration, the determination was affirmed on July 22, 2009. (AT 15, 87.) Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on September 21, 2010, and at which both plaintiff and his mother testified. (AT 15, 41-71.)

In a decision dated October 28, 2010, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from the SSI application date of November 8, 2008, through the date of that decision. (AT 15-30.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on November 22, 2011. (AT 1-6.) Thereafter, plaintiff filed this action in federal district court on January 24, 2012, to obtain judicial review of the Commissioner's final decision. (Dkt. Nos. 1-3.)

////

[2] Because the parties are familiar with the factual background of this case, including the history of plaintiff's mental health treatment, education, and disciplinary issues, the court does not exhaustively relate those facts in this order. These facts will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

II. ISSUES PRESENTED

Plaintiff has raised the following issues: (1) whether the ALJ failed to address the non-medical source opinions of plaintiff's teachers Chavez, Duran, and Metz; (2) whether the ALJ improperly failed to credit the testimony of plaintiff's mother; (3) whether the ALJ erred in finding that plaintiff did not meet, medically equal, or functionally equal Listing 112.08; and (4) whether the ALJ failed to appropriately develop the record and seek an updated medical opinion pursuant to Social Security Ruling ("SSR") 96-6p.[3]

III. LEGAL STANDARDS

Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

Sequential Evaluation for Childhood Disability Claims

An individual under the age of 18 is considered disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected

---

[3] Plaintiff's brief raised these issues in a somewhat different order.

to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations prescribe a three-step sequential evaluation process to determine whether a child's impairment or combination of impairments results in marked and severe functional limitations:

(1) Is the child engaged in substantial gainful activity? If so, the child is not disabled, regardless of his medical condition, age, education, or work experience. If not, the analysis proceeds to step two. 20 C.F.R. § 416.924(a), (b).

(2) Does the child have a medically determinable impairment or combination of impairments that is severe, i.e., that causes more than minimal functional limitations? If not, the child is not disabled. If so, the analysis proceeds to step three. 20 C.F.R. § 416.924(a), (c).

(3) Does the child's impairment or combination of impairments meet, medically equal, or functionally equal a listing? If not, the child is not disabled. If so, and the duration requirement is satisfied, the child is disabled. 20 C.F.R. § 416.924(a), (d).

To meet or medically equal a listing, the child's impairment(s) must meet or medically equal a set of criteria for the particular impairment as outlined in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1. See 20 C.F.R. § 416.924(d); Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.").

To determine whether a child's impairment(s) functionally equals a listing, the ALJ must assess the functional limitations caused by the child's impairment(s) in six domains: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(a), (b)(1). A child's impairment(s) functionally equals a listing when it is of listing-level severity, i.e., if it results in "marked" limitations (limitations that interfere seriously with the child's ability to independently initiate, sustain, or complete activities) in at least two domains of functioning, or "extreme" limitations (limitations that interfere very seriously with the child's ability to independently initiate, sustain,

or complete activities) in at least one domain of functioning. 20 C.F.R. § 416.926a(a), (e).

IV. DISCUSSION

A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the above-mentioned three-step analytical framework. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 8, 2008, plaintiff's SSI application date. (AT 18.) At step two, the ALJ determined that plaintiff had the following severe impairments: ADHD and oppositional defiant disorder.[4] (Id.) However, at the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment; in particular, Listings 112.08 (personality disorders) and 112.11 (ADHD). (Id.) Additionally, the ALJ determined that plaintiff did not have an impairment or combination of impairments that functionally equals a listing. (Id.) In performing the functional equivalence analysis, the ALJ assessed plaintiff's functional limitations across the six domains and found that plaintiff had marked limitation in interacting and relating with others, but less than marked limitation with respect to acquiring and using information, attending and completing tasks, and ability to care for himself, as well as no limitation with respect to moving about and manipulating objects, and health and physical well-being. (AT 24-29.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from plaintiff's SSI application date of November 8, 2008, through the date of the ALJ's decision. (AT 29-30.)

B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

In this case, it is essentially undisputed that plaintiff suffers from ADHD and oppositional defiance disorder, for which he has received treatment, including therapy and medication, from his primary care provider as well as a therapist and psychiatrists at San Joaquin

[4] "Oppositional defiant disorder is a pattern of disobedient, hostile, and defiant behavior toward authority figures." See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0002504/.

County Mental Health Services. Plaintiff has also been diagnosed with bipolar disorder. (AT 395-96, 507.) Plaintiff has an extensive record of disciplinary incidents at both his elementary and middle schools, and responsive actions taken include counseling/warnings, recess timeouts, contacting the parent, in-school suspensions, a bus suspension, multiple-day suspensions, and on one occasion contacting law enforcement. (AT 321, 394-95.) Incidents giving rise to the disciplinary actions include disrespectful and defiant behavior towards teachers, disrupting class, confronting and assaulting other students, throwing chairs, leaving class without permission, getting off the school bus in the middle of the route and running down the street, and bringing an Airsoft gun and pellets to school. (Id.) Plaintiff stayed in the general education program until he was placed in an intensive intervention class at his middle school in the Fall of 2010 upon entering the seventh grade. (AT 23, 47, 51-52.) Testing has revealed that plaintiff has average to superior intellectual ability, but that he has below average development of adaptive behavior skills. (AT 372-73, 393, 400.)

The broad question raised in this case is whether the severity of the functional limitations attributable to plaintiff's impairments renders plaintiff disabled under the standards articulated above. Plaintiff sets forth various arguments as to why the ALJ's non-disability determination constitutes reversible error. Plaintiff's arguments are addressed separately below.

1. Whether the ALJ failed to address the non-medical source opinions of plaintiff's teachers Chavez, Duran, and Metz

Plaintiff contends that the ALJ entirely failed to address the opinions of plaintiff's teachers Gina Chavez, Fabiola Duran, and Christopher Metz. Around February 2010, each of these teachers completed a Social Security Teacher Questionnaire, which requested the teacher to evaluate plaintiff with respect to various activities within the same six domains used to assess functional equivalence to a listing. More specifically, each teacher was requested to indicate whether, compared to the functioning of same-aged children without impairments, plaintiff had no problem, a slight problem, an obvious problem, a serious problem, or a very serious problem

with regards to each particular activity. (AT 415-22, 425-31, 434-39.) The ALJ did not discuss the opinions of these teachers in his decision.

The Ninth Circuit Court of Appeals has explained that lay testimony as to a claimant's symptoms and functional limitations is "competent evidence that the ALJ must take into account" and "*cannot* be disregarded without comment." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (emphasis in original) (citation and quotation marks omitted). To discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness." Id. However, the ALJ is not necessarily required "to discuss every witness's testimony on a individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Id.

For the reasons discussed below, the court finds that the ALJ failed to provide germane reasons for implicitly discounting the opinions of plaintiff's teachers. Furthermore, the court concludes that the error was not harmless, because the teachers' opinions could plausibly suggest that plaintiff has marked limitation in the domain of attending and completing tasks, which combined with the ALJ's finding of marked limitation in the domain of interacting and relating with others could in turn result in an ultimate finding of disability.

Plaintiff's sixth grade science teacher, Gina Chavez, indicated in her Teacher Questionnaire that plaintiff was argumentative, disruptive, and sometimes had difficulty patiently taking in new materials. (AT 425-27.) In the domain of attending and completing tasks, she rated plaintiff as having a "very serious problem" with completing class/homework assignments and waiting to take turns, as well as a "serious problem" with paying attention when spoken to directly, sustaining attention during play/sports activities, focusing long enough to finish an assigned activity or task, refocusing to a task when necessary, carrying out single-step and multi-step instructions, changing from one activity to another without being disruptive, organizing his own things or school materials, completing work accurately without careless mistakes, working

without distracting himself and others, and working at a reasonable pace/finishing on time. (AT 427.) Ms. Chavez also indicated that plaintiff had serious and very serious problems in the domain of interacting and relating with others, including with seeking attention appropriately, expressing anger appropriately, asking permission appropriately, following rules, and respecting/obeying adults in authority. (AT 428.)

Fabiola Duran, plaintiff's sixth grade mathematics teacher, stated in her Teacher Questionnaire that plaintiff was intelligent but argumentative, disrupted the class, and that it had been necessary at times to suspend him or remove him from the classroom. (AT 415-18.) In the domain of attending and completing tasks, she rated plaintiff as having a "very serious problem" with focusing long enough to finish the assigned activity or task and organizing his own things or school materials, as well as a "serious problem" with paying attention when spoken to directly, sustaining attention during play/sports activities, refocusing to a task when necessary, carrying out single-step and multi-step instructions, waiting to take turns, changing from one activity to another without being disruptive, completing class/homework assignments, completing work accurately without careless mistakes, working without distracting himself or others, and working at a reasonable pace/finishing on time. (AT 417.) Ms. Duran also stated that plaintiff had serious and very serious problems in the domain of interacting and relating with others, including with seeking attention appropriately, expressing anger appropriately, asking permission appropriately, following rules, and respecting/obeying adults in authority. (AT 418.)

Christopher Metz, plaintiff's sixth grade English Language Arts and social studies teacher, opined in his Teacher Questionnaire that plaintiff was a "very smart young man but argumentative to a very large degree"; that plaintiff did not follow classroom rules and disrupted the teaching environment on a constant basis; and that it had been necessary to warn plaintiff, remove him from the classroom, and suspend him at times. (AT 434-37.) In the domain of attending and completing tasks, Mr. Metz rated plaintiff as having "a very serious problem" with focusing long enough to finish the assigned activity or task, waiting to take turns, changing from

one activity to another without being disruptive, organizing his own things or school materials, working without distracting himself or others, and working at a reasonable pace/finishing on time, as well as a "serious problem" with paying attention when spoken to directly, sustaining attention during play/sports activities, refocusing to task when necessary, carrying out single-step and multi-step instructions, completing class/homework assignments, and completing work accurately without careless mistakes. (AT 436.) Furthermore, like Ms. Chavez and Ms. Duran, Mr. Metz also opined that plaintiff had serious and very serious problems in the domain of interacting and relating with others, including with seeking attention appropriately, expressing anger appropriately, asking permission appropriately, following rules, and respecting/obeying adults in authority. (AT 437.)

These opinions plausibly suggest that plaintiff, in addition to having marked limitation in the domain of interacting and relating with others (as found by the ALJ), also has marked limitation in the domain of attending and completing tasks. According to the applicable regulations, the domain of attending and completing tasks specifically considers "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them." 20 C.F.R. § 416.926a(h). For a school-age child (ages 6-12), the regulations state that:

> [Y]ou should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

Id. § 416.926a(h)(2)(iv). Examples of limited functioning in this domain, which do not by themselves necessarily describe a marked limitation, are listed as follows:

> (i) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.
> (ii) You are slow to focus on, or fail to complete activities of interest to you, e.g. games or art projects.
> (iii) You repeatedly become sidetracked from your activities or you frequently interrupt others.
> (iv) You are easily frustrated and give up on tasks, including ones you are capable of completing.
> (v) You require extra supervision to keep you engaged in an activity.

Id. § 416.926a(h)(3).

The Commissioner argues that the ALJ was not required to specifically address the opinions of teachers Chavez, Duran, or Metz, because the ALJ discussed the Teacher Questionnaires completed by two other teachers, Sherri Taylor and Cheryl McDaniel.

Sherri Taylor, plaintiff's fifth grade teacher for several subjects, in a December 2, 2008 Teacher Questionnaire stated:

> It is obvious in class that Nick has a hard time focusing and staying on task. He is disruptive constantly, enough to where students complain about sitting near him and often during testing I have to send him to the office so the rest of the class can concentrate. He's non-stop tapping, flicking, throwing things sometimes. He does not listen well to directions and immediately following directions will say "I don't get it" when you know he does!

(AT 209.) In the domain of attending and completing tasks, Ms. Taylor rated plaintiff as having a "very serious problem" with changing from one activity to another without being disruptive, organizing his own things or school materials, working without distracting himself or others, and working at a reasonable pace/finishing on time, as well as a "serious problem" with carrying out multi-step instructions, completing class/homework assignments, and completing work accurately without careless mistakes. (Id.) She also assessed serious and very serious problems in the domain of interacting and relating with others. (AT 210.)

////

Cheryl McDaniel, plaintiff's fifth to sixth grade teacher for several subjects, in a June 29, 2009 Teacher Questionnaire stated:

> Nick is a very bright student. When he takes his medication he can stay focused and work. He can still have problems with organization and sitting still. When he comes to school without them he basically cannot function in a classroom setting. His work is not readable and he disrupts the class so much he needs to be removed.

(AT 259.) In the domain of attending and completing tasks, Ms. McDaniel rated plaintiff as having a "serious problem" with waiting to take turns, organizing his own things or school materials, and completing class/homework assignments, as well as an "obvious problem" with paying attention when spoken to directly, focusing long enough to finish an assigned activity or task, refocusing to task when necessary, changing from one activity to another without being disruptive, completing work accurately without careless mistakes, working without distracting himself or others, and working at a reasonable pace/finishing on time. (Id.) Ms. McDaniel also assessed numerous very serious problems, serious problems, and obvious problems in the domain of interacting and relating with others. (AT 260.)

To be sure, the opinions of teachers Taylor and McDaniel are very similar to the opinions of teachers Chavez, Duran, and Metz. Thus, the court agrees with the Commissioner that if the ALJ had provided germane reasons for discounting the opinions of Taylor and McDaniel, the ALJ would not necessarily have been required to provide individualized reasons for discounting the opinions of Chavez, Duran, and Metz. Molina, 674 F.3d at 1114. However, although the ALJ summarized the questionnaires submitted by Taylor and McDaniel, the ALJ never specifically discussed why he ultimately discounted those opinions, especially the serious and very serious problems indicated in the domain of attending and completing tasks. (See AT 21-22.) Therefore, there are no obvious "germane reasons" for discounting the opinions of Taylor and McDaniel that can be transferred to the opinions of Chavez, Duran, and Metz. Furthermore, as will be discussed below, the ALJ also did not perform any meaningful credibility

analysis with respect to the testimony of plaintiff's mother from which potential germane reasons could be gleaned.

Consequently, the court finds that the ALJ erred in failing to provide germane reasons for discounting the opinions of Chavez, Duran, and Metz (and for that matter, the opinions of plaintiff's other teachers, Taylor and McDaniel). Furthermore, the error was not harmless. The above-mentioned opinions were given by teachers who worked closely with plaintiff on an almost daily basis in different subjects and during different school years. Additionally, although the assessments are by different teachers, their opinions are quite similar in assessing serious and very serious problems in the domain of attending and completing tasks. Given that the ALJ had already found that plaintiff had marked limitation in the domain of interacting and relating with others, and that the teachers' assessments plausibly suggest that plaintiff may also have marked limitation in the domain of attending and completing tasks, it is arguably a close question as to whether marked limitations exist in two domains, which would result in a finding of disability. As such, it was incumbent upon the ALJ to clearly articulate germane reasons for discounting the teachers' assessments.

2. <u>Whether the ALJ improperly failed to credit the testimony of plaintiff's mother</u>

Plaintiff contends that the ALJ also failed to provide germane reasons for discounting the testimony of plaintiff's mother. Plaintiff's mother testified, in part, that:

> Nicholas has a very hard time remaining focused, making appropriate choices, completing schoolwork. He has often ran [sic] out of his classrooms, been – he's thrown chairs, he's been disruptive. He's hit other children. He's defiant, not just to his peers but staff, anyone giving him instruction; just very defiant, very inattentive to the things that he should be doing.

(AT 48.) She conceded that "testing has proved that he is capable, but because of his lack of attention during his regular classroom activities and things like that, there is a difference in what he's actually capable of and what he actually produces in the classroom." (AT 51.) "[H]is

inability to pay attention and stay focused and complete the tasks that were presented to him interfered with his ability to perform academically." (AT 54.) Plaintiff's mother testified that she had made efforts to get him into a special education program even before the seventh grade, but that there had been availability issues. (Id.) She also stated that plaintiff was easily aggravated at home, had punched a whole in the living room wall in an attempt to hit his sister, and had made overtures to hit her (his mother) as well. (AT 54-55, 59.)

The ALJ analyzed plaintiff's mother's credibility as follows:

> The claimant's mother's statements appeared to be credible at the hearing, but based on the lack of supporting objective medical evidence, I cannot ignore the incongruence between the two. However, on April 22, 2010 the claimant's grandmother informed the claimant's counselor that the claimant was calmer at home since his mother left his stepfather (Exhibit 10F). The claimant's treatment records indicate that his relationship with his stepfather was strained which could have been a factor contributing to his emotional outbursts both at home and at school.

(AT 23.)

The ALJ's reference to "lack of supporting objective medical evidence" is woefully insufficient to reject the testimony of plaintiff's mother. As an initial matter, the statement is vague, does not refer to any specific examples of medical records or opinions that contradict the testimony, and thus in effect requires the court to comb through all of the medical records to independently verify the ALJ's assertion. This is improper, because it is the ALJ's duty to point to the specific medical evidence that allegedly undermines the testimony.

Furthermore, a careful review of the record reveals that the objective medical evidence is in fact fairly ambiguous, with some evidence that potentially detracts from plaintiff's mother's testimony, and other portions that potentially support her testimony. For example, the consultative educational psychologist, Dr. Robert L. Mattesich, performed psychological testing on April 2, 2009, and noted that plaintiff "functioned well within the highly structured and one-to-one testing setting, but behaviors characteristic of ADHD were readily observable during the evaluation." (AT 373.) Plaintiff was assessed with below average development of adaptive

behavior skills, which suggested that he was "functioning significantly below his level of capability in his performance of day to day activities. Nicolas' social functioning appears to be impaired due to his impulsiveness and his tendency to react to social cues before processing the implications...Nicolas will be most successful when he is in a structured setting where distractions are minimized and visual cues are utilized." (AT 373-74.) Dr. Mattesich did not specifically address plaintiff's functional limitations with respect to the six domains, but curiously assessed plaintiff with a fairly high GAF score of 75.[5]

By contrast, plaintiff's treating providers at San Joaquin County Mental Health Services assessed much lower GAF scores of 48 and 50.[6] (AT 442-84, 485-527, 545-84.) The treatment records, which document numerous therapy sessions and examinations, note alternating improvement and worsening of plaintiff's symptoms and behavior, with attempts to find the correct levels and combination of medications. (Id.) The treatment notes further contain some references to plaintiff not always taking his medication as directed. (See, e.g., AT 462, 558.) However, there is also evidence in the record suggesting that plaintiff had significant difficulties even when taking his medication. (See, e.g., 227, 259, 262.)

In an April 5, 2010 report, Dr. Joanne Blount, the school psychologist for the Lodi Unified School District, found that plaintiff's "current behavioral data indicates high risk for social-emotional disturbance, particularly with interpersonal relationships, conduct problems, inappropriate behavior, and depression. The previous behavioral data suggests hyperactivity,

---

[5] GAF is a scale reflecting "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). A GAF score of 71-80 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psycho-social stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." Id.

[6] A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

aggression, conduct problems, externalizing problems, anxiety, depression, somatization, internalizing problems, attention problems, atypicality, behavior symptoms index, adaptability, activities of daily living, functional communication, and adaptive skills." (AT 400.) Nevertheless, Dr. Blount opined that plaintiff's learning needs could be met through the general education program, but that he may need "additional support to help with his emotional and behavioral issues." (AT 401.) As noted above, it was ultimately decided to remove plaintiff from the general education program and place him in an intensive intervention program in the Fall of 2010. (AT 23, 47, 51-52.)

Faced with such ambiguous medical evidence, the court cannot independently determine, as a matter of law, that there is a lack of objective medical evidence to support the testimony of plaintiff's mother. Indeed, it would be inappropriate, as a reviewing court, to assume such a primarily fact-finding role. Instead, it is the task of the ALJ to appropriately weigh the medical evidence and point to the specific objective medical evidence that he believes detracts from plaintiff's mother's testimony, enabling the court to then determine whether the ALJ's findings are supported by substantial evidence in the record as a whole.

Finally, the ALJ's other stated reason for discounting plaintiff's mother's testimony – his suggestion that plaintiff's strained relationship with his stepfather could have contributed to plaintiff's symptoms – is plainly insufficient, by itself, to discount the testimony. While it is possible to draw an inference that plaintiff's stepfather played a role in plaintiff's symptoms and behavior, the record shows that plaintiff continued to have similar symptoms and disciplinary incidents after his mother left his stepfather. (AT 444, 549-50, 552, 559, 578, 584.)

Accordingly, the court finds that the ALJ also erred in failing to provide germane reasons for discounting the testimony of plaintiff's mother.

In light of the ALJ's failure to properly consider and provide germane reasons for discounting the opinions of plaintiff's teachers and plaintiff's mother, the court finds it appropriate to remand the case for proper consideration of these opinions along with all of the

other record evidence. Not surprisingly, plaintiff requests that the case be remanded for payment of benefits. However, an award of benefits is only appropriate where "no useful purpose would be served by further administrative proceedings," "the record has been thoroughly developed," and "there are no outstanding issues that must be resolved before a proper disability determination can be made." Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399, 1401 (9th Cir. 1988). Here, given the ambiguities and inconsistencies in the objective medical evidence, as discussed above, the court finds that the better course of action is to remand the case for further proceedings. This remand would allow the ALJ in the first instance to better address the record evidence, obtain any needed clarification, and further develop the record as necessary. Indeed, the court expresses no opinion regarding how the evidence of plaintiff's impairments, including the medical evidence, lay opinion evidence, etc. should ultimately be weighed within the confines of the applicable regulations and case law.

3. Other Issues: whether the ALJ erred in finding that plaintiff did not meet, medically equal, or functionally equal Listing 112.08; and whether the ALJ failed to appropriately develop the record

In light of the court's conclusion that the case should be remanded for further consideration of the opinions of plaintiff's teachers and mother, which may or may not impact the ALJ's determinations regarding whether plaintiff meets, medically equals, or functionally equals Listing 112.08, the court declines to address these issues at this juncture.[7] Upon remand,

---

[7] Nevertheless, the court notes that in any future decision, the ALJ should more thoroughly explain why plaintiff does or does not meet or medically equal the specific criteria for Listing 112.08. In this case, the ALJ merely observed that plaintiff "has not met the profound functional limitations required by section 112.08 of the listings." (AT 18.) Again, such a vague statement, without reference to the applicable criteria and any specific medical evidence and findings, does not allow for meaningful review by this court. Even though the Commissioner in its briefing before this court pointed to several potential reasons why plaintiff did not meet or medically equal Listing 112.08, the court is required "to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ-not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009). The Commissioner's decision "must stand or fall with the

the ALJ will also have an opportunity to consider whether further development of the record would be appropriate to resolve any ambiguities or inconsistencies in the record evidence.

V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 18) is GRANTED IN PART.

2. The Commissioner's cross-motion for summary judgment (Dkt. No. 21) is DENIED.

3. The case is remanded for further proceedings consistent with this order pursuant to sentence four of 42 U.S.C. § 405(g).

4. Judgment is entered for plaintiff.

5. The Clerk of Court is directed to close this case and vacate all dates.

IT IS SO ORDERED.

DATED: April 1, 2013

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

reasons set forth in the ALJ's decision, as adopted by the Appeals Council." See Barbato v. Comm'r of Soc. Sec. Admin., 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996); see also Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[W]e are wary of speculating about the basis of the ALJ's conclusion....").